Fred W. Bowley, Admr. of the Estate of Ralph W. Bowley,

*vs.*

Aetna Life Insurance Company.

York. Opinion, August 26, 1935.

14

*Willard & Willard*, for plaintiff.
*William B. Mahoney*,
*Theodore Gonya*, for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.

THAXTER, J. The plaintiff is the administrator of the estate of Ralph W. Bowley who, while on the highway in an automobile on September 30, 1931, was killed in a collision with a truck owned by Lawrence Smith and driven by an employee of the owner. Suit was instituted for damages for the death by the administrator against Smith based on the negligence of the operator of the truck, and a judgment for $5,136.60 was recovered. The plaintiff now has brought this bill in equity, under the provisions of Rev. Stat. 1930, Chap. 60, Secs. 177-178, to enforce this judgment against the insurance company, which he alleges insured Smith against loss by reason of his liability for such accident. The sole qestion in issue is whether the owner of the truck was in fact insured. The sitting Justice sustained the bill and ordered the insurance company to pay the amount of the judgment. From this decree it has appealed.

In May, 1931, Smith was the owner of a 1931 Chevrolet one and a half ton truck. This he insured with the defendant company through Boothby and Bartlett of Waterville, the agents of the company. On September 18, 1931, Smith traded this truck for a new one of the same model, which of course had different serial and engine numbers. The policy of insurance, which was admitted in evidence, contains a rider transferring the coverage from the first truck to the new one. This rider according to its terms became effective October 3, 1931, four days after the accident.

The plaintiff's contention is that Smith called the office of Boothby and Bartlett on the telephone on the morning of September 19th, and told them that he had traded the truck covered by the policy, and asked them to bind the new one, and that they agreed

to do so and told him to send in the engine and serial numbers of the new truck as soon as he found out what they were. Smith says that this call was made from a pay station in Augusta located in a fruit store, and that he talked with some man in the office of Boothby and Bartlett.

Walter S. Austin testifies that he handled such matters in the office of the agents, that no order for a transfer of coverage was reported to him, and that the transfer was in fact made because of a request in a letter from Smith dated October 3, 1931, of the following tenor:

"(Letterhead Utilities Pole Supply Company, Carrabassett, Me.) Oct. 3rd, 1931.

RECEIVED

Boothby & Bartlett, Oct. 3 1931

Waterville, Maine. Boothby & Bartlett Co.

Gentlemen:— Waterville, Maine

Will you be so kind as to change the engine number and serial number on Policy No. J. A. 3496765 to cover truck of the same year, model number etc. having an engine number of T2681427 and Serial No. 12LT7520. Policy is enclosed.

Yours very truly,<br>LAWRENCE L. SMITH"

The defendant objects to the admission in evidence of the conversation which Smith claims to have had with the office of Boothby and Bartlett on the ground that its effect is to vary the terms of a written contract. There can be no doubt that an oral contract to bind a risk can be made. No responsible insurance representative would contend otherwise. If the written instrument in this case did not conform to an oral agreement entered into between the parties, the assured was not without a remedy. Just what the form of this relief should be, whether by reformation of the contract or the introduction in this proceeding of parol evidence to show its terms, it is unnecessary to decide, for we are satisfied that in this instance the plaintiff has failed to sustain the burden of showing that there was any oral agreement at all to transfer this coverage.

The main evidence to support the bill is the testimony of Smith himself. His method of handling this matter, which was certainly of

some importance, was to say the least casual. Those in the agent's office, to whom such a request would be naturally referred, did not hear of it. But discarding such considerations, facts which are undisputed refute the claim.

It is improbable that, if such a contract were outstanding, the assured would not have made some reference to it in his letter of October 3, 1931. That would lead any impartial reader to the conclusion that the transfer was to be made as of the date on which it was written. It certainly was not, according to its terms, to convey information to be embodied in a contract already made. It was itself the request for the transfer of the insurance.

Neither is it reasonable to suppose that the assured would write to the insurance company, four days after an accident resulting in death had taken place, about a policy which he now claims covered liability for that accident, and make no mention of the occurrence at all. He says that his reason for not doing so was because he did not feel that his driver was in any way to blame. However honest he may have been in that belief, he must have realized at least the possibility of a claim or of litigation which would result in expense, against which he would have been protected by the policy, if prompt notification were given the insurer.

Most important of all, however, is a statement made by the assured January 25, 1932. This was executed in the office of Charles J. McGraw, the attorney in Maine for the defendant. Mr. Smith had come to the office to discuss the suit which was about to be brought against him. Mr. McGraw expressed a doubt whether his insurance policy covered liability for this accident, and said that the insurance company could not proceed with any investigation of it, unless Smith would sign an agreement to the effect that such work by the company should not be construed as a waiver of its right to disclaim liability under the policy. Smith executed such paper. At the same time Mr. McGraw, in the presence of Smith, dictated a recital of facts which had been given to him by Smith relative to the accident and the insurance coverage. This statement Smith signed. There is not a suggestion that it was not a fair statement, or that any advantage whatever was taken of the assured at the time he executed it. He says that he suggested no correction in it. The following portion of this document is certainly significant

in the light of Smith's claim at the trial that he requested the transfer of his insurance coverage on September 19, 1931:

"I have liability policy No. JA—3496765, in the Aetna Companies, covering 1931 Chevrolet 1½ ton truck, Serial No. 12LT5744, Motor No. T24943447. September 18th, 1931, I exchanged this truck for another 1931 1½ ton truck, exactly the same model. Inasmuch as the new truck was almost identical with the old one I did not understand that I was supposed to notify the insurance company and request them to change the motor and serial numbers in the policy. Bernard Dunham operating this truck was involved in a fatal accident near Gorham, Maine, on September 30, 1931. I saw the account of the fatal accident in the Press Herald the next morning and I immediately went to the telephone office for information as it was first believed that it was a telephone truck involved in the fatal accident. While making my own personal investigation of this accident the question of insurance came up and someone told me that I should have my insurance changed to cover the new truck purchased September 18th, 1931, and involved in this accident of September 30th, 1931, and accordingly, on October 3rd, 1931, I wrote in requesting the change."

Not only does he herein state in substance that prior to October 3rd, 1931, four days after the fatal accident, he had not had his insurance changed to cover his new truck, but he gives the reason why he had not done so. This deliberate narration of fact is a complete refutation by the assured himself of the only evidence in the case which supports the plaintiff's claim. Its effect is compelling, and explains why there was no knowledge in the office of Boothby and Bartlett of the telephone call of September 19th.

*Appeal sustained.*
*Case remanded to sitting Justice for a decree dismissing the bill.*